**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS—WACO DIVISION**

**FILED**

June 08, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ cap

DEPUTY

CASE NO: <u>6:26-cv-00224-AM-DNM</u>

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 992-7104

Email: atpg-tech@charter.net

| | |
|---|---|
| LARRY GOLDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE, INC.<br><br>    Defendant. | **JURY TRIAL DEMANDED**<br><br>**Infringement of a Patented Process under 35 U.S.C. § 154(a)(1) & 35 U.S.C. § 271(g); Shifting of Burden under 35 U.S.C. § 295; Collecting a Reasonable Royalty under 35 U.S.C. § 284; and, Willful Patent Infringement**<br><br>June 8, 2026 |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT'S JURY TRIAL DEMAND
AND MOTION TO DISMISS**</u>

Pursuant to Rule 38(a), Defendant filed on 06/04/26 their "right of trial by jury as declared by the Seventh Amendment to the Constitution—that is preserved to the Defendant inviolate". Pursuant to Rule 38(b), "[o]n any issue triable of right by a jury, a party may demand a jury trial by: (1) "serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served". Both parties have filed their "jury trial demands and have served notice.

Pursuant to Rule 38(c), the Defendant did not specify the issues they wish to have tried by a jury; therefore, it is considered the Defendant have demanded a jury trial on all the issues so triable.

Patent infringement claims are issues-of-facts so triable by a jury [U.S. CONS'T. 7th Amend.]. Plaintiff have demanded a jury trial on the following issues:

- Infringement of a Patented Process under 35 U.S.C. § 154(a)(1);

- Infringement of a Patented Process under 35 U.S.C. § 271(g);

- Shifting of Burden under 35 U.S.C. § 295;

- Collecting a Reasonable Royalty under & 35 U.S.C. § 284; and,

- Willful Patent Infringement.

**35 U.S.C. § 154(a)(1):**

> "Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, if the invention is a process, of the right to exclude others from using, offering for sale or selling throughout the United States, or importing into the United States, products made by that process, referring to the specification for the particulars thereof."

On March 14, 2012, the Federal Circuit issued in *Zoltek Corp. v. United States*, No. 2009-5135. Acting *en banc*: "With the full court having vacated its *Zoltek III* decision, the panel addressed the narrower question of whether Lockheed's actions in this case created liability under § 1498(a). The panel voted yes. The panel reasoned that, '[i]f a private party had used Zoltek's patented process to create the resulting product, there would be liability for infringing Zoltek's patent right under [35 U.S.C.] § 154(a)(1) and § 271(g). We hold that the Government is subject to the same liability in this case, [] precedent and legislative intent dictate that result.'"

**35 U.S.C. § 271(g):**

2

"Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent…"

Thus, under section 271(g), a party can be liable for infringement for importing into the United States, or selling or using in the United States, a product made by a patented process, ***regardless of where the process is performed or where the product was ultimately made***. Congress added section 271(g) to increase protection of U.S. technology industries, specifically the pharmaceutical and biotechnology industries. *See* Kastenmier, *Report to* accompany H.R. 1931 (Apr. 22, 1987). Section 271(g) also sought to conform U.S. patent law to the infringement standards under foreign intellectual-property law. *See* S. Rep. No. 100-83 (1987).

**35 U.S.C. § 295**

"In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds— (1) that a substantial likelihood exists that the product was made by the patented process; and, (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine; the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made."

The Federal Circuit also held that applying a single-entity requirement under § 271(g) would impose an undue evidentiary burden on patentees that was contrary to the intent of Congress. The legislative history of § 271(g) showed that Congress recognized "the great difficulties a patentee may have in proving that the patented process was used in the manufacture of a product in question" where the manufacture occurred abroad. *Id*. Part of Congress's solution is laid out in § 295, which shifts the

burden of proof to the accused infringer to prove that the patented process was not used in manufacturing the accused product.

**35 U.S.C. § 284**

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

Twelve federal judges (nine from the appellate court) were *CORRECT* when they inferred; or came to the conclusion: "infringement of Plaintiff's patents occur when a mobile, consumer, or cellular device is integrated with, or interconnected to, a CBRNE-H detection capability". The twelve federal judges were also *CORRECT* in their determination: "the accused devices [] required *"modification"* in order to infringe Plaintiff's patents".

Plaintiff have plead "enough fact[s] to raise a reasonable expectation that discovery has revealed the defendant Apple is responsible for the *"modification"* of a common cell phone to include a CBRNE-H detection capability, and is therefore liable for the misconduct alleged." See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**Willful Patent Infringement**

For patents, the Supreme Court set the current standard in its 2016 decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc*. The Court described enhanced damages as a "punitive" or "vindictive" sanction reserved for "egregious cases of culpable behavior," using words like "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

The jury will determine also if Apple was award of Plaintiff's patents in 2007, when Apple allegedly manufactured abroad under a government contract.

4

**Plaintiff's Fact Issues Triable by a Jury**

The first fact issue so triable by a jury is "***who***" *modified* the common ordinary cell phone, that allegedly infringes Plaintiff's patented invention for a communicating, monitoring, detecting, and controlling (CMDC) device. Plaintiff alleges it was Apple "***who***" *modified* the common ordinary cell phone.

The second fact issue so triable by a jury is "***where***" the common ordinary cell phone, that allegedly infringes Plaintiff's patented invention for a communicating, monitoring, detecting, and controlling (CMDC) device was "*modified*". Plaintiff alleges Apple *modified* the common ordinary cell phone abroad—outside of the United States.

It is also the jury's duty to hear "shift burdened" evidence, under the provisions of 35 U.S.C. § 295; from the Defendant that they did not "use", and are currently not "using", Plaintiff's patented process to manufacture or produce a *modified* cell phone that allegedly infringes Plaintiff's patented invention for a communicating, monitoring, detecting, and controlling (CMDC) device. Apple bears the burden of proving to a jury they are not manufacturing the *modified* cell phones abroad, and/or they are not shipping or importing the *modified* cell phones into the United States.

The third fact issue so triable by a jury is "***when***", under the provisions of 35 U.S.C. §§ 154(a)(1) & 271(g), Apple's "*modified*" cell phone, that allegedly infringes Plaintiff's patented invention for a communicating, monitoring, detecting, and controlling (CMDC) device; actually or literally, upon shipment or importation, infringes Plaintiff's patented process for a communicating, monitoring, detecting, and controlling (CMDC) device.

Plaintiff alleges Apple infringes Plaintiff's patented process for a communicating, monitoring, detecting, and controlling (CMDC) device, under 35

U.S.C. §§ 154(a)(1) & 271(g), "*when*" Apple ships or imports the *modified* cell phones into the United States.

The fourth fact issue so triable by a jury is "*whether*" Apple's *modified* cell phone that twelve federal judges have confirmed infringes Plaintiff's patented CMDC invention because the *modified* cell phones that includes as standard, "nine sensors used as biosensors"; creates a liability for damages for Apple of "no less than a reasonable royalty the use made of Plaintiff's patented process by Apple". (35 U.S.C. § 284).

The fifth fact issue so triable by a jury is "*whether*" Apple's behavior is "characteristic of a pirate". For patents, the Supreme Court set the current standard in its 2016 decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc*. The Court described enhanced damages as a "punitive" or "vindictive" sanction reserved for "egregious cases of culpable behavior," using words like "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

Plaintiff requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38, in Plaintiff's Amended Complaint as a Matter Course", on the cover sheet (page), and on pages 270, and 275. A right guaranteed under the Seventh Amendment of the United States Constitution.

Pursuant to Rule 39(a), "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless: (1) "the parties or their attorneys file a stipulation to a nonjury trial or so stipulate ion the record".

Both parties have demanded a jury trial on all issues so triable. Anything to the contrary threatens a violation of the parties guaranteed right to a trial by jury under the Seventh Amendment of the United States Constitution.

6

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Because both parties have demanded a jury trial, and because the Defendant have not satisfied three of the four elements for claim preclusion, *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)), Plaintiff is requesting we move forward with jury selection. The test for claim preclusion has four elements:

(1) the parties are identical or in privity;

(2) the judgment in the prior action was rendered by a court of competent jurisdiction;

(3) the prior action was concluded by a final judgment on the merits;

(4) the same claim or cause of action was involved in both actions.

The Defendant failed to satisfy elements 2, 3, and 4 of the test for claim preclusion because the only element that "*relate*" the cases is element 1, which identifies the names of the parties.

*Element 2*: the judgement in the prior action references a third-party modifying the iPhone after importation; in the current case Plaintiff alleges Apple's modification of a common ordinary cell phone was made abroad and the alleged infringement occurs upon importation of the modified cell phone into the United States. 35 U.S.C. §§ 154(a)(1) & 271(g).

*Element 3*: Same answer for element 2: "the [final] judgement in the prior action references a third-party modifying the iPhone after importation; in the current case Plaintiff alleges Apple's modification of a common ordinary cell phone was made abroad and the alleged infringement occurs upon importation of the modified cell phone into the United States. 35 U.S.C. §§ 154(a)(1) & 271(g).

7

*Element 4*: Same answer for element 2 & 3: "the [final] judgement in the prior action references a third-party modifying the iPhone after importation under 35 U.S.C. § 271(a); in the current case Plaintiff alleges Apple's modification of a common ordinary cell phone was made abroad and the alleged infringement occurs upon importation of the modified cell phone into the United States under 35 U.S.C. §§ 154(a)(1) & 271(g).

**Patent Eligibility and Mutual Exclusivity**

Plaintiff's patents, patent claims, patent claims' limitations, dependent claims, and multiple dependent claims, asserted in this complaint that describes Plaintiff's patented communicating, monitoring, detecting, and controlling (CMDC) device as a "mobile, consumer, or cellular device that is integrated with, or interconnected to, a CBRNE-H detection capability, have undergone rigorous and extensive examinations and re-examinations:

In 2006, Plaintiff's patent application's subject matter, patent claims, patent claims' limitations, and dependent claims, were examined under the "secrecy" provisions ordered by the United States Department of Defense (DOD).

In 2010 – 2013, Plaintiff's patent application's subject matter, patent claims patent claims' limitations, and dependent claims, were re-examined under the "reissue" provisions of the United States Patent and Trademark Office (USPTO). The USPTO conducted a more rigorous prosecution during the reissue process.

In 2014 – 2015, Plaintiff's patent application's subject matter and patent claims were challenged by the United States Department of Homeland Security (DHS) and the United States Department of Justice (DOJ), in an *Inter Partes Review* (IPR) at the United States Patent Trials and Appeals Board (PTAB), of the United States Patent and Trademark Office (USPTO).

8

In 2013 – 2021, Plaintiff's patent applications' subject matter, patents' claims, and patents' validity were challenged by the United States Department of Justice (DOJ) in the case of *Golden v. US* CFC Case No. 13-307C.

In 2013 – 2021, Apple, who performed work for the Government under an implied "authorization or consent", to provide a modified cell phone capable of CBRNE-H detection, was given eight (8) years to appear in the case of *Golden v. US* No. 13-307C to protect its interest by failed to do so. Apple is "collateral estoppel" from challenging Plaintiff's patents.

In 2022 – 2023, Apple failed to adhere to the PTAB's claim term construction of "*built-in, embedded*"; which the PTAB construed as "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device". Apple, instead, replaced the PTAB's claim term construction of "*built-in, embedded*" with "modification". Apple failed again to inform the Court that Apple is allegedly the modifier of the Apple "*modified*" cell phone.

> *Golden v. Apple, Inc*. et al CAFC Case No. 22-1229 Dkt. 16
> filed 09/08/2022: 09/08/2022: "In the Apple case, the district court
> dismissed the complaint as frivolous without the issuance of service
> of process but declined to dismiss with prejudice."

> *Golden v. Apple, Inc*. NDC Case No. 22-4152 Dkt. 29 filed
> 10/20/2022: "The motion to dismiss is granted. The claims asserted
> in the complaint are frivolous."

> *Golden v. Apple, Inc*. CAFC Case No. 23-1161 Dkt. 25 filed
> 05/12/2023: "The district court properly dismissed the complaint as
> frivolous" … "dismissing antitrust claims as frivolous" …
> "dismissing patent infringement claims as frivolous" … "affirming
> dismissal of patent infringement claims as frivolous" …

9

In 2026, although Apple is "collateral estoppel" from challenging Plaintiff's patents; and especially "collateral estoppel" from challenging Plaintiff's patents on the lower standard of evidence (i.e., preponderance of evidence standard); Apple filed a motion to dismiss in this case that was nothing more than another challenge to the validity of Plaintiff's patents under 35 U.S.C. § 101.

> "[a] patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. Anyone challenging the patents validity, must do so on the heightened 'clear and convincing evidence' standard". § 282(a)

Time after time, over the years, and over several of Plaintiff's patents; when the phase "in, on, upon, or adjacent the monitoring equipment", was used to describe the detection capability is placed either inside or outside the monitoring device, the USPTO have always allowed the phase.

Claims are one sentence descriptions, included in a patent, that describe what aspects of the invention are protected by law. There are independent claims and dependent claims. Dependent claims add details to independent claims and are consequently "narrower" than their parent independent claim. The product manufactured by or for the government need only infringe one claim, independent or dependent, to "infringe the entire patent." See *Johns Hopkins University v. CellPro, Inc.*, 152 F3d 1342 (Fed Cir 1998).

In a precedential decision, the U.S. Court of Appeals for the Federal Circuit in *Vascular Solutions*, along with related Teleflex companies (collectively with Vascular Solutions, "Teleflex") *v. Medtronic*, Inc. defined the concept of "*mutual exclusivity*" in patent claims:

The Federal Circuit held that the district court erred when it determined the asserted claims were "*mutually exclusive*" and indefinite. The Federal Circuit rejected the notion that claims in a patent cannot vary in how they describe the disclosed subject matter or that independent claims must be totally consistent with other independent claims.

The Federal Circuit stated: "The district court's conclusion, in effect, means that (1) claims in a patent cannot vary in the way they claim the disclosed subject matter, and (2) independent claims must be totally consistent with other independent claims. Claiming is not restricted in this way." It emphasized that the art of patent claiming often involves drafting claims in various ways to encompass different aspects of the disclosed subject matter, as long as each claim informs those skilled in the art about the scope of the invention with reasonable certainty.

The Federal Circuit instructed the district court to "conduct claim construction on a claim-by-claim basis with the understanding that, at the claim construction stage, the claims are not necessarily '*mutually exclusive*' since each independent claim is a different ordered combination of limitations."

*Example*: Apple seeks to have Plaintiff's '287 patent invalidated simply because the patent was named in previous litigation. Plaintiff's '287 patent have 6 independent claims. The first 3 independent claims of the '287 patent covers Plaintiff's patented "locking mechanisms". The last 3 independent claims of the '287 patent covers Plaintiff's patented "central processing units". Apple's pattern is to have the Court unjustly and unlawfully remove or not allow Plaintiff's '287 patent under the preclusion and *Kessler* doctrines without claim construction or final judgement on the merits for Plaintiff's patented "locking mechanisms" and Plaintiff's patented "central processing units".

Therefore, when a case is dismissed for preclusion or *Kessler* simply because the same patents was asserted in a previous case, and the individual claims were

11

never examined for infringement, the dismissal is improper "since each independent claim is a different ordered combination of limitations".

In Plaintiff's prior litigation the Courts created a loophole for invalidating Plaintiff's patents without meeting the higher "clear and convincing" evidence standard; without submitting invalidity contentions; without a Markman hearing or claim construction. No law supports this type of loophole creation.

### Horizontal Stare Decisis

In a motion hearing held in the Western District of Texas (WDT) Court on January 22, 2026 in *Golden v. Google, LLC* Case No. 25-0434, Google stated on the record that their objective was to have the case transferred from the WDT to the Northern District of California (NDC) Court for dismissal under "[l]aw of the case or *res judicata*"; the preclusion doctrine. Apple seeks to do the same in this case.

> "[o]bviously we think there's independent grounds to transfer based on the interest of justice, based on the previous action, the *res judicata* arguments … The Court: Mr. Warren, let me hear a succinct explanation about your argument with respect to the familiarity of the forum of the law that will govern the case. Did I glean from your moving papers that the law that you're referring to would be law of the case? MR. WARREN: Law of the case or *res judicata*, Your Honor … MR. WARREN: Unless the Court deems it related to the previous case, which I assume it would, in which case it would go to the judge for the previous case … THE COURT: Where -- who is that judge? MR. WARREN: It's Judge Lin."

On Feb. 6, 2026 Google filed in the previous case *Golden v. Google, LLC* NDC Case No. 22-5246 a "NOTICE by Google LLC of Administrative Motion to Consider Whether Cases Should Be Related".

Under the California Rules of Court 2026, Rule 3.300. Related cases: (a) Definition of "related case": A pending civil case is related to another pending civil

case, or to a civil case that was dismissed with or without prejudice, or to a civil case that was disposed of by judgment, if the cases:

(1) Involve the same parties and are based on the same or similar claims;

(2) Arise from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact;

(3) Involve claims against, title to, possession of, or damages to the same property; or

(4) Are likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

Judge Rita Lin, the presiding Judge in Plaintiff's previous case *Golden v. Google, LLC* NDC Case No. 22-5246, Dkt. No. 79, issued an ORDER on 2/11/26 that the previous case and the current case *Golden v. Google, LLC* NDC Case No. 26-0831 Dkt. 46, are "*Not Related*". Clerk's notice filed on 2/18/26 in the current case no. 26-0831: "The court has reviewed the motion and determined that no cases are related and no reassignments shall occur."

The requirements for case(s) to be determined as being related are the same, or nearly the same, as the requirements for a case to be dismissed under the doctrines of *Res Judicata* and *Kessler*. Therefore, when Judge Lin determined the cases are "*not related*", it nullified and rendered moot the Defendant's claims that the current case should be dismissed under the doctrines of *Res Judicata* and *Kessler*.

Currently, this case *Golden v. Apple* WDT Case No. 26-0224, and the Google case (*Golden v. Google* NDC Case No. 26-0831) are substantially. Both Apple and Google both are alleged to have used Plaintiff's patented process to manufacture or produce a "*modified*" cell phone that Plaintiff alleges infringes his communicating, monitoring, detecting, and controlling (CMDC) device upon shipment or importation of the "*modified*" cell phone into the United States under 35 U.S.C. §§ 154(a)(1) & 271(g). See the following chart for similarities:

13

**Allegations against Apple and Google are Substantially the Same**

| Fourteen Counts of Alleged Infringement against Apple under §§ 154(a)(1) & 271(g) in *Golden v. Apple* WDTC No. 26-0224-AM-DNM | Fifteen Counts of Alleged Infringement against Google under §§ 154(a)(1) & 271(g) in *Golden v. Google* NDC Case No. 26-0831-LJC |
|---|---|
| COUNT VII: Apple's "*modified*" Cell Phones | COUNT I: Google's "*modified*" Cell Phones |
| COUNT VIII: Apple's CPU for Apple's "*modified*" Cell Phone | COUNT II: Google's CPU for Apple's "*modified*" Cell Phone |
| COUNT IX: Apple's iOS for Apple's "*modified*" Cell Phone | COUNT III: Google's iOS for Apple's "*modified*" Cell Phone |
| COUNT X: Apple's Megapixel Camera for Apple's "*modified*" Cell Phone | COUNT IV: Google's Megapixel Camera for Google's "*modified*" Cell Phone |
| COUNT XI: Apple's GPS for Apple's "*modified*" Cell Phone | COUNT V: Google's GPS for Google's "*modified*" Cell Phone |
| COUNT XII: Apple's Biometric ID for Apple's "*modified*" Cell Phone | COUNT VI: Google's Biometric ID for Google's "*modified*" Cell Phone |
| COUNT XIII: Apple's Disabling Lock for Apple's "*modified*" Cell Phone | COUNT VII: Google's Disabling Lock for Google's "*modified*" Cell Phone |
| COUNT XIV: Apple's NFC for Apple's "*modified*" Cell Phone | COUNT VIII: Google's NFC for Google's "*modified*" Cell Phone |
| COUNT XV: Apple's Watch Series for Apple's "*modified*" Cell Phones | COUNT IX: Google's Watch Series for Google's "*modified*" Cell Phones |
| COUNT XVI: Apple's Wi-Fi Chips for connecting Apple's "*modified*" Cell Phones | COUNT X: Google's Wi-Fi Chips for connecting Google's "*modified*" Cell Phones |
| COUNT XVII: Apple's Wireless Protocols for connecting the Apple Watch Series | COUNT XI: Google's Wireless Protocols for connecting the Google Watch Series |
| COUNT XVIII: Apple's Wireless Protocols for connecting Apple's "Find My" | COUNT XII: Google's Wireless Protocols for connecting Google's "Find My Device" |
| COUNT XIX: Apple's Wireless Protocols for connecting Apple's "Car Key" & Drones | COUNT XIII: Google's Wireless Protocols for connecting Google's "Android Digital Car Key" |
| COUNT XX: Apple's Nine "Standard Biosensors" for Apple's "*modified*" Cell Phone | COUNT XIV: Google's Nine "Standard Biosensors" for Google's "*modified*" Cell Phone |

14

| X | COUNT XV:<br>Google's Wireless Protocols for connecting Waymo's<br>Self-Driving Cars |
|---|---|

Plaintiff has attached as ***Exhibit A***, a copy of the complaint filed in the Northern District of California Court in *Golden v. Google, LLC* Case No. 26-0831. Judge Rita Lin has already ruled that cases filed under a cause of action of 35 271(a) are not related to the cases filed under cause of actions 35 U.S.C. §§ 154(a)(1) & 271(g).

Which means Apple, in this current case *Golden v. Apple* WDT Case No. 26-0224 failed to show how the fourth element for claim preclusion; "(4) the same claim or cause of action was involved in both actions", is satisfied when the cases are not related.

Horizontal stare decisis requires district courts to follow their own prior decisions when the same legal question arises again. Unlike vertical stare decisis, where lower courts must obey higher courts, horizontal stare decisis governs district courts' relationship with their own past. The doctrine creates a rebuttable presumption that settled rulings stay settled, giving people a predictable legal landscape.

Judge Rita Lin's rulings on "related cases" have been settled, and should stay settled. If the cases are not related there can be no valid motion to dismiss under the *Res Judicata* [preclusion] and/or the *Kessler* doctrines.

**Defendant's Motion to Dismiss is Rendered a Moot Argument**

Under current law, "[Defendant's pleadings] are moot when the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell*

15

*v. McCormack*, 395 U.S. 486, 498 (1969)). *See* also, e.g., *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (same); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (same).

Intervening circumstances that may render a motion to dismiss moot can result either from actions attributable to the litigants or from outside forces. Because federal courts lack jurisdiction to adjudicate moot controversies, a federal court can—and indeed must—dismiss moot pleadings even if none of the parties ask the court to do so. *See*, e.g., *United States v. Juvenile Male*, 564 U.S. 932, 933–34 (2011) (per curiam) (deeming moot even though "[n]o party had raised any issue of mootness [], and the Court of Appeals did not address the issue *sua sponte*"); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978)

Moreover, the Supreme Court has stated that litigants have "a 'continuing duty to inform the Court'" of intervening events that could potentially render a case moot. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (chastising litigant for its "failure, despite its obligation to the Court, to mention a word about the potential mootness issue in its brief in opposition to the petition for writ of certiorari").

## CONCLUSION

When the Court evaluates Defendant's motion to dismiss, all the factual allegations in Plaintiff's complaint are taken as true. The Court must also draw all reasonable inferences in Plaintiff's favor. The judge is looking for concrete factual allegations that, if proven, would entitle Plaintiff to relief under 35 U.S.C. §§ 154(a)(1) & 271(g).

This standard works in Plaintiff's favor. The Defendant carries the burden of proving Plaintiff's complaint fails, not the other way around. Plaintiff don't need to attach evidence, present witnesses, or demonstrate that Plaintiff wins. Plaintiff need only a complaint that tells a coherent story connecting real facts to a recognized legal claim.

16

Sincerely,

s/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(M) 8649927104

Email: atpg-tech@charter.net

## <u>VERIFICATION</u>

## Pursuant to 28 U.S.C. § 1746

I, Larry Golden, over the age of 18, competent to testify, and having firsthand knowledge of the facts stated herein, do hereby declare, certify, verify, affirm, and state under penalty of perjury under the laws of the United States of America, that the foregoing statements are true, correct, and complete to the best of my understanding, knowledge, and belief, and made in good faith.

Executed and signed this 8th day of June, 2026, with all rights reserved and without recourse and without prejudice; is this "verification" for "Plaintiff's Response to Defendant's Jury Trial Demand and Motion to Dismiss".

s/ *Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-992-7104

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of June, 2026, a true and correct copy of the foregoing "Plaintiff's Response to Defendant's Jury Trial Demand and Motion to Dismiss", was served upon the following Defendant via e-mail:

John M. Desmarais

DESMARAIS, LLP

230 Park Avenue, 26th Floor

New York, NY 10169

Phone: 212-351-3400

Email: jdesmarais@desmaraisllp.com

Email: colsheski@desmaraisllp.com

s/ *Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-992-7104